United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BAY AREA SURGICAL GROUP, INC., et. al., <br><br> Plaintiff(s), <br> v. <br><br> AETNA LIFE INSURANCE COMPANY, et. al., <br><br> Defendant(s). | CASE NO. 5:13-cv-05430 EJD <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO STAY; DENYING WITHOUT PREJUDICE DEFENDANTS' MOTIONS TO DISMISS, TO SEVER, AND FOR SANCTIONS** |

Plaintiffs Bay Area Surgical Group, Inc., Knowles Surgery Center, LLC, National Ambulatory Surgery Center, LLC, Los Altos Surgery Center, LP, Forest Ambulatory Surgery Center Associates, LP, and SOAR Surgery Center, LLC (collectively, "Plaintiffs") commenced the instant action against Defendants Aetna Life Insurance Company ("Aetna") and over 200 employers and employee benefit plans (the "ERISA Plan Defendants") asserting various violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). Presently before the court are a number of motions filed by various defendants, including motions to dismiss, motions to sever, a motion for sanctions, motions for joinder, and a motion to stay filed by Aetna. See Docket Item Nos. 255, 279, 326, 329, 363, 387, 389, 459, 460, 558. The court held a hearing on Aetna's motion to stay on June 6, 2014.

Federal jurisdiction arises under 28 U.S.C. § 1331. Having carefully considered the

1
CASE NO. 5:13-cv-05430 EJD
ORDER GRANTING DEFENDANT'S MOTION TO STAY; DENYING WITHOUT PREJUDICE DEFENDANTS'
MOTIONS TO DISMISS, TO SEVER, AND FOR SANCTIONS

pleadings[1] in conjunction with the argument presented at the hearing, the court finds the circumstances presented by this case warrant a stay in favor of related state court proceedings. Accordingly, Aetna's motion to stay will be granted and the additional motions will be denied without prejudice for the reasons explained below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are a group of ambulatory surgery centers located in and around San Jose, California, and provide medical and surgical procedures at their facilities. With regard to the ERISA Plan Defendants, Plaintiffs allege that Aetna acts as their designated fiduciary and administrator. Plaintiffs do not participate in the provider networks designated by Aetna or the ERISA Plan Defendants but are instead "non-contracted" or "out-of-network" providers. As such, Plaintiffs have not agreed to accept a specifically-negotiated rate for their services from Aetna or the ERISA Plan Defendants. Instead, out-of-network providers likes Plaintiffs are routinely paid according to the "usual, customary and reasonable" amount, or the "UCR," as contemplated in the plan documents governing the individual employee benefit plans. The appropriate UCR rate for any given service is determined based on a review of the prevailing or competitive charges for similar health care services by similar types of providers within the same geographical area at the time.

Plaintiffs have provided out-of-network medical services to patients covered by the ERISA Plan Defendants. For their services, Aetna allegedly represented that it would pay Plaintiffs in an amount that is the lower of either the provider's actual billed charge or the UCR amount. Plaintiffs allege, however, that Aetna has improperly underpaid Plaintiffs for timely claims, even after further demands and appeals. In doing so, Plaintiffs believe that Aetna has not applied a proper UCR methodology to calculate payments. Plaintiffs contend that Aetna and the ERISA Plan Defendants

---

[1] Such consideration includes Plaintiffs' objection to Aetna's reply brief, which the court finds misplaced. See Docket Item No. 687. Any new arguments in the reply were necessitated by the evolving nature of the claims at issue and the parties involved in this case and, as explained further below, both had changed by the time the reply was filed. Moreover, the court has considered Plaintiffs' unauthorized "supplemental opposition" filed May 1, 2014. See Docket Item No. 665. Neither party is prejudiced by these additional documents because the court allowed a full hearing on this motion, at which all issues raised by the pleadings could and should have been addressed.

2
CASE NO. 5:13-cv-05430 EJD
ORDER GRANTING DEFENDANT'S MOTION TO STAY; DENYING WITHOUT PREJUDICE DEFENDANTS' MOTIONS TO DISMISS, TO SEVER, AND FOR SANCTIONS

owe them over $26 million as a result of the underpayments.

Based on these allegations, Plaintiffs assert the following causes of action in the instant federal action: (1) violation of 29 U.S.C. § 1132(a)(1)(B); (2) violation of 29 U.S.C. § 1132(a)(2); (3) violation of 29 U.S.C. §§ 1024(b), 1104, and 1133(2); and (4) declaratory and injunctive relief under 29 U.S.C. § 1132(a).  Plaintiffs seek monetary damages and "a declaration that Plaintiffs are entitled to have Aetna and the ERISA Plans calculate UCR based on the ERISA and Aetna Plan documents."

But this litigation, initiated in November, 2013, is not the only dispute between these parties.  In or about February, 2012, Aetna filed a Complaint in Santa Clara County Superior Court against Plaintiffs and five additional defendants for intentional interference with contract, declaratory judgment, unjust enrichment, and unfair competition in violation of California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200.[2]  Aetna alleges the defendants named in that action have instituted an illegal insurance billing scheme whereby in-network physicians refer Aetna patients to out-of-network outpatient surgery centers, such as Plaintiffs, in which the referring physician has invested and from which the referring physician receives profits.  The surgery center then allegedly waives the out-of-network coinsurance payment to entice the patient to utilize its services but does not inform Aetna of this waiver when it submits its claim for payment.

Plaintiffs (or at least three of them) also initiated no fewer than 14 separate state-court lawsuits in 2012 against Aetna for various combinations of breach of contract, breach of implied contract, negligent misrepresentation, promissory estoppel, equitable estoppel, quantum meruit, indebitatus assumpsit, and violation of the UCL.  In these lawsuits, the surgery centers allege that Aetna underpaid on particular patient claims for out-of-network services despite prior confirmation of a patient's coverage and an authorization to perform the services.  These lawsuits further allege Aetna miscalculated the UCR and failed to pay the contractual percentage that Plaintiffs believe Aetna should have paid according to the governing documents of the subject benefit plan.

---

[2] The court takes judicial notice of the state court pleadings to the extent they are referenced in this order.  See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (The court "may take judicial notice of court filings and other matters of public record.").

The state court consolidated the surgery center lawsuits with Aetna's suit on May 8, 2013. Thereafter, Plaintiffs filed a cross-complaint against Aetna, again alleging that Aetna reimbursed out-of-network claims by underpricing the UCR. It appears based on a case management statement filed in the consolidated state court action that discovery has commenced and has progressed in some fashion. Moreover, a trial in the consolidated action has been scheduled for May, 2015.

Turning back to the federal case, Aetna now moves to stay the instant action in favor of the state court proceedings.

## II.   LEGAL STANDARD

The district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). Using this power, one case may be stayed in favor of another. Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863-64 (9th Cir. 1997) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.").

In order to determine whether a Landis stay should be implemented, various interests must be considered: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962) (citing Landis, 299 U.S. at 254-55). Whether to grant a stay request is a matter entrusted to the discretion of the district court. See Landis, 299 U.S. at 254 ("How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.").

When weighing the relevant interests, the court must be mindful that "if there is even a fair

possibility that the stay for which he prays will work damage to some one else," the moving party "must make out a clear case of hardship or inequity in being required to go forward." Id. at 255. Indeed, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." Id. Moreover, the moving party must cite to something more than the intrinsic inconvenience arising from involvement in litigation. "[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of Landis." Lockyer v. Mirant Corp., 398 F.3d 1098, 1112 (9th Cir. 2005).

### III. DISCUSSION

While the parties agree that the principles of Landis and its progeny govern this motion, they disagree on how those principles apply to the present circumstances. Each relevant consideration is discussed below.

### A. Whether a Stay is Efficient or Will Simplify Issues

The court begins by examining whether entering a stay of this action in favor of the consolidated state case will result in any considerable efficiency or simplification of issues since the parties have devoted the majority of their briefing to this topic. Efficiency and simplification resulting from the abatement of a federal action may weigh in favor of a stay. See Travelers Casualty & Surety Co. of Am. v. Pengilly Robbins Slater Law Firm, No. 2:13-cv-01121-JCM-CWH, 2014 U.S. Dist. LEXIS 21125, at *6 (D. Nev. Feb. 19, 2014) ("[A] stay may be appropriate if resolution of issues in another proceeding would assist in resolving the proceeding sought to be stayed" and "a stay may be appropriate for docket efficiency and fairness to the parties pending resolution of independent proceedings that may bear upon the case sought to be stayed.").

Aetna believes a stay is beneficial because of the similarities between this action and the state case. As Aetna points out, with some limited exceptions and additions, the same parties are involved in the federal and state litigation. In addition, many of the critical factual allegations and legal issues overlap since Plaintiffs allege in both cases that Aetna engaged in systematic underpayment of their out-of-network claims. Plaintiffs also demand the same type of relief in both

5
CASE NO. 5:13-cv-05430 EJD
ORDER GRANTING DEFENDANT'S MOTION TO STAY; DENYING WITHOUT PREJUDICE DEFENDANTS' MOTIONS TO DISMISS, TO SEVER, AND FOR SANCTIONS

cases. In particular, Plaintiffs seek to recover the difference between what Aetna paid and what they believe Aetna should have paid for a series of insurance claims. Plaintiffs also request an injunction requiring Aetna to re-calculate the UCR in one form or another.

Unsurprisingly, Plaintiffs identify distinctions between the federal and state actions in an effort to avoid a stay. First, Plaintiffs argue a stay is unwarranted because different parties are involved. Second, they note that the causes of action are different; ERISA is invoked in the federal case while the state case only involves California law. Third, Plaintiffs point out that the actual insurance claims at issue in the federal case are now only those that arise from self-funded insurance plans whereas the state case involves only fully-insured insurance plans.[3]

While the court recognizes the state and federal actions are not mirror images of each other, the circumstances presented here nonetheless weigh in favor of a stay. Looking first at the parties involved, it is undeniable that most are the same, and Plaintiffs' attempt to distinguish the cases based on the rather insignificant differences is unconvincing. Indeed, a stay can result in efficiency and simplification even without complete identity of parties. See Landis, 299 U.S. at 254. And here, there is complete identity of the first-string players for each side.[4]

There are also important factual and legal similarities between the instant action and the state case even though the actual causes of action at issue are distinct. True, this case arises solely under ERISA and the state case involves only state law. But one of the disputes common to both

---

[3] The cases did not start out that way, however. The segregation of defendants did not actually occur until May 5, 2014, when Plaintiffs agreed to dismiss with prejudice all fully-insured defendants from this action and pursue claims against those defendants in the state case. See Docket Item No. 668. It is worth noting, though, that Plaintiffs' decision to partition their claims does not mean that Aetna has done so or will do the same. Thus, it is entirely possible, and more likely than not, that Aetna would file a counterclaim in this action under the same theories it asserted in its state-court complaint. Aetna's counsel stated as much at the hearing on this motion. And if this occurred, the federal action would have ever more in common with the state action.

[4] Of course, the significant difference in the *number* of involved parties cannot be ignored. That difference, however, is actually insignificant in substance. Plaintiffs' limited allegations against the hundreds of additional defendants in the federal action reveal that it was actually Aetna that engaged in the active conduct placed at issue in the Complaint. It appears that the employers and employee benefit plans are being sued because they engaged Aetna as the administrator of their self-funded insurance plans and not because they, themselves, underpriced or underpaid any insurance claims. For this reason, their status as defendants in one action and not the other is not a substantial distinction.

cases - the one over the proper calculation of the UCR for Plaintiffs' out-of-network services - underlies and transcends most of the causes of action, if not all of them, no matter their title, no matter their assertion against self-funded or fully-insured plans, and regardless of which specific insurance claims are raised. Indeed, in order for any court to determine whether Plaintiffs are owed anything additional under Aetna's insurance contracts (as well as whether Aetna overpaid for any claims), that court will first have to calculate the UCR applicable to a particular service and then compare that calculation to what was actually paid for the service. Recognizing the overlapping issue, one of this court's contemporaries recently stayed a similar case under circumstances nearly identical to this one. See Order Staying Entire Action Pending Trial in State Court Action, Pomona Valley Hosp. Med. Ctr. v. Blue Cross of Cal., No. CV 12-7008-GW(JEMx) (C.D. Cal. Feb. 1, 2013), ECF No. 554. Implicit in that decision is an observation of two salient factors: the inefficiency inherent in two forums simultaneously undertaking a UCR calculation and the irreconcilable decisions that could possibly result. This court makes the same observation here.[5]

In sum, the court finds that a stay of this action would promote the "orderly course of justice" due to the similarities between the federal and state litigation. A state-court determination on proper calculation of the UCR could provide considerable assistance to this court when resolving Plaintiffs' federal claims against Aetna and the ERISA Plan Defendants.

### B. The Possibility of Damage, Hardship or Inequity

The court now considers the possible damage to Plaintiffs in granting a stay, and the potential hardship or inequity imposed on Aetna in the absence of a stay.

Looking first to Plaintiffs, their articulation of prejudice focuses mainly on delay. In essence, Plaintiffs emphasize that resolution of their federal claims against the self-funded insurance plans, including their request for an injunction, would be postponed during the pendency of the state

---

[5] At the hearing, Plaintiffs' counsel distinguished Pomona Valley Hospital from this case by arguing that the state court would calculate the UCR under state law while this court would calculate the UCR based on the language of the plan at issue. This may be a distinction without a difference here because, as indicated above, Plaintiffs seek to have the UCR calculated pursuant to the plan language in both this case and in the state litigation. Thus, as it currently stands, Plaintiffs seek the same species of relief in each forum.

7
CASE NO. 5:13-cv-05430 EJD
ORDER GRANTING DEFENDANT'S MOTION TO STAY; DENYING WITHOUT PREJUDICE DEFENDANTS' MOTIONS TO DISMISS, TO SEVER, AND FOR SANCTIONS

court case. But this argument is unpersuasive in the context of a <u>Landis</u>-based inquiry because the level of prejudice attributable to delay under these circumstances is minimal, at best. Indeed, the crux of Plaintiff's federal complaint is a demand for monetary damages. A delay in compensation for past harms does not equate to a strong showing of prejudice. <u>CMAX, Inc.</u>, 300 F.2d at 268-69. Nor does Plaintiff's request for injunctive relief strengthen their position in any measurable sense since, in reality, the specific injunction sought in this case is one designed solely to prevent further financial harm to Plaintiffs. In other words, the injunction is just another method of recouping monetary damages, and there is no indication that Plaintiffs will be harmed irreparably during a pause in these proceedings. Thus, the delay is not significantly prejudicial to Plaintiffs.[6]

This conclusion is only magnified when the underlying equities are examined. It is undeniable that the situation in which Plaintiffs now find themselves is something of their own creation. Although Plaintiffs could have maintained legal and equitable claims against the self-insured plans in the state court litigation, Plaintiffs voluntarily chose to dismiss those claims from that case and pursue them exclusively in this one. Having done so, Plaintiffs now want to argue that a stay of their newly-segregated claims would be unduly prejudicial. But when the complained-of prejudice is a manufactured one, brought about by a voluntary, and perhaps strategic, litigation decision, the intensity attributed to it must be tempered accordingly. The fact that Plaintiffs could have avoided the delay they now wish to use as a basis to oppose the stay must be considered in the balance of hardships.

Plaintiffs additional contention fares no better. They cite to a "significant risk" that evidence necessary to prove their ERISA claims will be lost or destroyed during the pendency of a stay. This nebulous contention is entirely unsupported, however; just *what* evidence is at risk and *how* it could possibly be lost or destroyed is a mystery. Considering most of the relevant evidence will consist of

---

[6] Just to emphasize the point, Plaintiffs' injunction is distinguishable from the one considered by the Ninth Circuit in <u>Lockyer v. Mirant Corporation</u>, 398 F.3d 1098 (9th Cir. 2005). There, the California Attorney General brought an action for injunctive relief under § 26 of the Clayton Act in order to protect "the interests of the electricity consumers of northern California." Here, the injunction at issue seeks only to protect Plaintiffs' interest in full payment for their services - nothing more.

1  business records maintained by Aetna and Plaintiffs themselves, the court finds little chance of loss
2  or destruction. Accordingly, the court finds that Plaintiffs have only adduced a minimal level of
3  prejudice, and certainly not a "fair possibility" that any considerable damage would come to them.
4        For its part, Aetna maintains that the effort and expense of defending this action while also
5  litigating in state court will cause it significant hardship. While inconvenient, the burden of
6  simultaneous litigation is not generally relevant to this analysis. See Am. Honda Motor. Co., Inc. v.
7  Coast Distribution Sys., Inc., No. C 06-04752 JSW, 2007 U.S. Dist. LEXIS 19981, at *5, 2007 WL
8  672521 (N.D. Cal. Feb. 26, 2007); see also Lockyer, 398 F.3d at 1112. But when, as here, "the
9  opponent does not adduce evidence that it will be harmed by a stay . . . courts have considered the
10 moving party's burden in litigating the case to be a legitimate form of hardship." In re Am. Apparel
11 Shareholder Derivative Litig., No. CV 10-06576 MMM (RCX), 2012 U.S. Dist. LEXIS 146970, at
12 *158-59 (C.D. Cal. July 31, 2012).
13       Without doubt, the nature of this particular action could impose substantial prejudice on
14 Aetna due to its size and the corresponding potential for extensive litigation. The number of
15 involved parties means that all aspects of this case will be more complex than that of other cases.
16 Standard events of litigation that normally pass with ordinary effort, such as scheduling conferences
17 or depositions, will become extraordinary undertakings, requiring more time, more effort and, in
18 turn, more fees and costs. Indeed, if history is any guide, then this litigation will be unusually
19 burdensome on all involved since it took nearly 700 filings just to get to this point - the first motion
20 hearing in the matter. As such, the court cannot discount the hardship imposed on Aetna if it is
21 required to litigate this behemoth at the same time as a consolidated, and equally complex, state
22 court case. Under these circumstances, the court finds that Aetna has articulated a legitimate,
23 substantial form of prejudice.
24     **C.    Balancing and Conclusion**
25       On balance, the potential prejudice to Aetna in the absence of a stay plainly outweighs the
26 minimal amount of prejudice that Plaintiffs may experience if a stay is imposed. This determination,
27 coupled with the fact that the result of the state court litigation could potentially simplify this action
28

9
CASE NO. 5:13-cv-05430 EJD
ORDER GRANTING DEFENDANT'S MOTION TO STAY; DENYING WITHOUT PREJUDICE DEFENDANTS'
MOTIONS TO DISMISS, TO SEVER, AND FOR SANCTIONS

to a large extent, leads the court to conclude that abatement in favor of the parallel proceedings is justified. Aetna's motion will therefore be granted.

That being said, the court understands "[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." Leyva, 593 F.2d at 864. Here, Plaintiffs' claims are not particularly urgent, and the state court litigation, already pending for two years, will proceed to trial in less than a year. Thus, a stay for the duration of trial court proceedings in state court is reasonable at this time. But just to be sure, reporting requirements will be imposed so that the state litigation can be monitored by this court and the continuing propriety of this stay can be evaluated on an ongoing basis.

## IV. ORDER

Based on the foregoing, Aetna's Motion to Stay (Docket Item No. 329) is GRANTED. This action is STAYED in its entirety pending completion of the trial in Santa Clara County Superior Court Case Number 1-12-CV-217943, or until further order of the court. The clerk shall ADMINISTRATIVELY CLOSE this file.

Plaintiffs and Aetna shall submit a brief Joint Status Report apprising the court of the status of the state court action on September 15, 2014, and continuing every three months thereafter. Furthermore, within 10 days of either (1) a resolution of the state court action through settlement or other informal means, or (2) completion of the state court trial, the parties shall file a Joint Notice informing the court of such development and shall request that this matter be reopened and that a Case Management Conference be scheduled.

All other pending motions are DENIED WITHOUT PREJUDICE to being re-filed and re-noticed when appropriate.

**IT IS SO ORDERED.**

Dated: June 17, 2014

EDWARD J. DAVILA
United States District Judge

CASE NO. 5:13-cv-05430 EJD
ORDER GRANTING DEFENDANT'S MOTION TO STAY; DENYING WITHOUT PREJUDICE DEFENDANTS' MOTIONS TO DISMISS, TO SEVER, AND FOR SANCTIONS